SAFE DEPOSIT AND TRUST COMPANY OF
BALTIMORE,

TRUSTEE, GARNISHEE OF CATHERINE DAVIS BURT,


*vs.*


INDEPENDENT BREWING ASSOCIATION,
A CORPORATION.


*Attachment laws: "uncertain interests"; spendthrift trusts.*


The property devised in trust for a devisee is not liable to attachment, and can not be reached by his creditors by any process either at law or equity, where by the plain terms of the will, the right to the enjoyment of the income in the hands of the trustee is to the exclusion of his creditors.      p. 465

While the language of the Code, section 10 of Article 9, provides that any kind of property or credits may be attached for a person's debts, it does not apply to, or cover, a contingent or uncertain interest in a trust estate.      p. 468


*Decided January 13th, 1916.*


Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frank Gosnell* and *C. Morris Harrison* (with whom was *Robert L. Gill,* on the brief), for the appellant.

*J. Stanislaus Cook* (with whom was *Albert R. Stuart,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an attachment proceeding, issued out of the Superior Court of Baltimore City, on the 1st day of March, 1915, on a foreign judgment obtained in the District Court for the Eleventh Judicial District of the State of Minnesota by the plaintiff against the defendants and laid in the hands of the Safe Deposit and Trust Company of Baltimore, trustee, as garnishee of the defendants, Charles B. Burt and Catherine Davis Burt, his wife, non-resident debtors of the State of Maryland.

The garnishee appeared and moved to quash the attachment upon the ground that the defendants had no attachable interest in the property mentioned in the proceedings or in the hands of the garnishee, as trustee.

On the 7th of May, 1915, the attachment was dismissed by the appellee as to Charles B. Burt, but the motion as to Catherine D. Burt, the other defendant, was overruled. Thereafter, the case was tried upon the plea of *nulla bona,* and a second plea, that the income of the defendant in the trust estates in its hands as trustee, under the wills of the testator and testatrix is payable only to her during her life, after the death of her husband, who is at this time alive, and that the interest of the defendant therein is not subject to attachment.

The replication filed to these pleas asserts that the garnishee on the day of laying the attachment in its hands had to the value of the sum of $830.19/100 in the writ of attachment specified of the goods, chattels and credits of the defendant in its hands, etc.

The case was tried upon the pleadings, an agreed statement of facts, and certain exhibits filed therewith and from a judgment of condemnation to the extent of $1,093.47, and costs, against the interest of the defendant in and to property held by the garnishee, as trustee, this appeal has been taken.

The questions in the case are raised upon a single exception, and that is to the refusal of the Court to grant the following prayer, offered on behalf of the garnishee and the defendant, Catherine D. Burt: "The garnishee prays the Court to rule as a matter of law that under the pleadings, the agreed statement of facts and the exhibits in this case the defendant, Catherine Davis Burt, has no attachable interest in any property, funds, goods or chattels now held by the Safe Deposit and Trust Company of Baltimore as trustee under the wills of Alfred P. Burt and Mary E. Burt, and therefore the plaintiff is not entitled to a judgment of condemnation."

The ruling on this exception presents the important question in the case, and we shall first consider whether there was error in refusing this prayer. If, as a matter of law, the defendant Catherine D. Burt, under the facts disclosed by the record, had no attachable interest in the property held by the garnishee company, then the plaintiff was clearly not entitled to a judgment of condemnation, and the prayer should have been granted and not refused.

It is conceded that the interests of Charles B. Burt under the wills of Mr. and Mrs. Burt are not liable to attachment, and can not be reached by his creditors by any process either at law or equity, because by the plain terms of both wills, the right to the enjoyment of the income in the hands of the trustee shall be to the exclusion of creditors. *Smith* v. *Towers,* 69 Md. 88; *Reid* v. *Safe Deposit Co.,* 86 Md. 467; *Brown* v. *Macgill,* 87 Md. 162; *Jackson Square L. & S. Assoc'n.* v. *Bartlett,* 95 Md. 661.

Coming, then, to the interest of Mrs. Burt, we think it is clear from the language of the will of the testator (and it

was agreed for the purposes of this case that the two wills
were the same as to the interest), that the defendant, Mrs.
Burt, took an equitable contingent remainder for life under
both wills, and that this interest in the hands of the trustee
was not subject to attachment.

By the fourth clause of the testator's will it will be seen
that he left all the rest and residue of his property to the ap-
pellant company, in trust, for the uses and purposes set out
therein. After the death of his wife, who is now dead, he
provides as follows:

"And from and immediately after the death of my
said dear wife, subject of said annuity to my sister for
life as aforesaid, in trust to, * * * pay into the hands
of each of my sons, Charles B. Burt and Henry T.
Burt, one equal fourth part of the net income derived
from said trust property, or apply the same to the sup-
port, and maintenance of my said sons respectively or
to the support and maintenance of themselves and their
wives and children, as, in the judgment of said trustee
or its officers, or its successors in trust, shall be most
promotive of their best interests; but in no event shall
the share of said net income so devised for the use of
my said two sons, Charles and Henry and their fami-
lies, be subject to the order of my said two sons, nor
either of them, nor shall any assignee or grantee of
theirs or either of them be entitled to demand or re-
ceive their said shares of said net income, nor shall
the same at any time be subject to or liable for the pay-
ment of any debt or obligation which my said two sons,
Charles and Henry, or either of them, shall at any
time owe, contract or be under, or liable to attachment
therefor; but the same shall be alone payable, by said
trustee and its successors, to them personally and in-
dividually, or applied to the support and maintenance
of themselves, their wives and children as aforesaid,
in the discretion of said trustee or its successors; and
from and immediately after the death of my said son,
Charles, in trust to pay out of the net income of the

portion of my estate devised in trust for my said
son, Charles, one-half thereof to Catherine D. Burt,
wife of my said son Charles, for and during the term
of her natural life, and one-half thereof to the child,
children or descendants of my said son Charles, liv-
ing at the time of his death; and from and immedi-
ately after the death of said Catherine D. Burt, in
trust to pay and distribute to the child, children and
descendants of said Charles living at that time, if
any, said one-fourth part of said whole trust prop-
erty, absolutely, to be equally divided amongst them if
more than one, share and share alike, the child or chil-
dren of any deceased child or children of my said son
Charles, to take the share or portion to which its or
their parent would have been entitled to if living."

And by the will of Mrs. Burt it is provided:
"And from and immediately after the death of my
son Charles B. Burt, leaving his present wife Cather-
ine Burt, surviving him, in trust to pay one-half of the
third of said income theretofore payable to my son
Charles, unto his said wife, for and during her natural
life, and for that purpose retain a sufficient part of
said trust property.
"And subject to the above provisions for the said
wife of my son Charles, during her life, from and im-
mediately after the death of my son Charles, in trust
to pay, transfer and deliver the said third part of said
trust property, the income whereof is payable to or
for my said son Charles for life, to his daughter, Ag-
nes Burt, if she shall live to attain the age of twenty-
one years, or to her issue, * * * ."

It will be thus seen, under the plain terms of these wills,
that the income did not vest in the defendant, Catherine,
until the death of her husband, and then only unless she sur-
vived him. The manifest intention of the testator and tes-
tatrix was to provide for their son and his family during his

life and then for his wife after his death, if she survived him, and for his children.

The present case, therefore, falls directly within the rules of law announced by this Court in *Straus* v. *Rost,* 67 Md. 465; *Reilly* v. *Bristow,* 105 Md. 326, and the cases there cited, so a further discussion of them is not necessary.

While the language of the Code, Art. 9, sec. 10, is very broad, and provides that any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached, it has never been held, that it would apply or cover a contingent or uncertain interest in a trust estate, such as the one here in dispute.

In *Smith* v. *Gilbert,* 71 Conn. 149, the Supreme Court of Connecticut, held, in a somewhat similar attachment proceedings, that "an uncertain interest incapable of just appraisal and possibly of no value, could not be attached. The Court said: "When an interest which may be strictly neither goods nor land is nevertheless clearly property capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the State for 250 years clearly indicates that such interest is attachable property within the meaning of the statutes. But the same reasoning which has induced our Courts to place such a construction upon the language of our statutes, leads us to the conclusion that the defendant's interest in his father's estate is not attachable within the meaning of the law. While it is unjust that one should keep from his creditors property which can be fairly sold or applied to the satisfaction of his debts, it is equally unjust that a creditor should seize and destroy an interest of his debtor which is so uncertain and contingent that it cannot be fairly sold or appraised. The policy of the law justifies the extension of the right of attachment to property which, though not strictly within the letter, is within the equity of the statute. It does not justify such an extension of that right as will be likely to result in the destruction

of a paternal gift which can be of no present value to any one, and may never be of value to the debtor or his assignees." *Hill* v. *Boland,* 125 Md. 113; *Harris* v. *Whiteley,* 98 Md. 430; *Jordan* v. *Reynolds,* 105 Md. 288; *In re Gardner,* 106 Fed. R. 670; *In re Wetmore,* 108 Fed. R. 520; *In re Twaddell,* 110 Fed. R. 145; *Shryock* v. *Morris,* 75 Md. 72; *Humphrey* v. *Gerard,* 83 Conn. 346; *Hayward* v. *Peavey,* 128 Ill. 430; *Ducker* v. *Burnham,* 146 Ill. 9; *Watson* v. *Dodd,* 68 N. C. 528.

In the case at bar, the defendant had no such interest in the trust estates in the hands of the trustee as could be definitely ascertained and not being susceptible of appraisement, it could not be the subject of attachment.

The cases of *De Bearn* v. *Winans,* 115 Md. 604 and *De Bearn* v. *De Bearn,* 119 Md. 418, relied upon by the appellee, are entirely unlike this, and have no bearing upon the questions raised by this record.

For the reasons stated, the Court below committed an error in rejecting the appellant's prayer, and for this error, the judgment of condemnation will be reversed and as there can be no recovery, a new trial will not be awarded.

*Judgment reversed, without a new trial, with costs.*