### HITCHENS *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE

[No. 144, October Term, 1948.]

*Decided April 28, 1949.*

The cause was argued before MARBURY, C. J., and DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*J. Paul Schmidt,* with whom were *Weinberg & Green, Leonard Weinberg, Meyer M. Ohen,* and *George L. Clarke* on the brief, for appellant.

*W. Frank Every* and *William Bruce Oswald,* with whom was *J. Purdon Wright* on the brief, for Herbert H. Hitchens, appellee.

. *Charles Page,* with whom were *White & Page* on the brief, for Holloway & Leach, appellee.

Submitted on brief by *Edmund P. Dandridge, Jr.* and *Venable, Baetjer & Howard* for Safe Deposit & Trust Company, appellee.

HENDERSON, J., delivered the opinion of the Court.

In the case of *Hitchens v. Safe Deposit and Trust Company,* 193 Md. 53, 66 A. 2d 93, we considered the question whether the divorced wife of Herbert Henry Hitchens could reach his interest under the will of his grandfather by a non-resident attachment based upon a separation agreement. In the instant case, questions are presented as to the *quantum* of his interest, and whether it can be reached by the claimant in an equity proceeding.

This proceeding was initiated by a bill of complaint, filed by the surviving trustee in the Circuit Court of Baltimore City, praying a construction of the will of John H. Hitchens. Answers were filed by all the beneficiaries, and by Laura May Hitchens, who set up her claim under the separation agreement, praying the chancellor to award her one-third of the share of Herbert in the net assets and the arrears of overdue payments of "permanent alimony", under the separation agreement. The chancellor assumed jurisdiction of the trust and passed two decrees, one authorizing a sale of the property without prejudice to the rights of the parties and fixing the interest of Herbert at one-quarter of the pro-

ceeds of sale, and the other disallowing the wife's claim, on account of the spendthrift trust provisions of the will, and ordering that the one-fourth of the corpus and accrued income be paid to Herbert. From those decrees only Laura May Hitchens has appealed.

Upon the death of the testator's wife and children, the will directed the trustee to pay the net income as follows: "After payment to my said grandson, John H. Stocksdale, the portion of the income of my estate bequeathed to him in this my will, I give, devise and bequeath said balance of the net income therefrom unto my grandchildren (including my grandson, John H. Stocksdale) living at the time of my death, in equal shares (if there be more than one or to the survivor of them, if there be but one living at the time of my death) until my youngest grandchild living at the time of my death shall reach the age of twenty-one years, when the trust shall cease and all the property, chattels and effects then consituting the corpus of the estate shall be sold and the proceeds of such sale shall be divided by my said [trustee] * * * among the grandchildren entitled to take under this my will."

At the time of his death the testator left surviving him four grandchildren: Herbert Henry Hitchens, John H. Stocksdale, Margaret Leach (Holloway), and Robertson Leach. John H. Stocksdale died without issue and intestate in 1929. The appellees contend that his interest passed to his mother, Grace Leach, and in turn to Mrs. Holloway and Robertson Leach upon her death in 1932. Upon the death of Sadie A. Meakin, the last surviving life tenant, in 1947, all of the living grandchildren of the testator were over twenty-one years of age, and consisted of Herbert Henry Hitchens, Margaret Leach (Holloway) and Robertson Leach.

The appellant, claiming as partial assignee and creditor of Herbert under the separation agreement, contends that the remainder vested in the three grandchildren living at the termination of the life-estate in equal one-third shares, or, in other words, that by a true construc-

tion of the will there was a condition of survivorship until the termination of the life-estates. We find no merit in this contention.

It is perfectly clear that the grandchildren entitled to take shares of the net income, after the termination of the life-estates and until the youngest grandchild living at the time of the testator's death should reach the age of twenty-one, were those living at the time of the testator's death. Upon the happening of that event, distribution was to be made "among the grandchildren entitled to take under this my will." The language seems plainly to refer to those entitled to receive income under the preceding clause. At the testator's death the then surviving grandchildren were definitely ascertained. The subsequent falling in of the life estates was an event certain to happen. There was no contingency, such as death with or without issue, nor was there any gift over. There was, of course, no express condition of survivorship. Under these circumstances, the rule of early vesting, the presumption against intestacy, and the general scheme of the will, all negative the idea of a class gift or an implied condition of survivorship. *Miller, Construction of Wills*, § 227. The controlling authorities were fully reviewed in the recent cases of *Walker v. Safe Deposit & Trust Company*, 192 Md. 695, 65 A. 2d 311; *Boynton v. Barton*, 192 Md. 582, 64 A. 2d 750; *Evans v. Safe Deposit and Trust Company*, 190 Md. 332, 58 A. 2d 649, and *Reese v. Reese*, [*Chism v. Reese*], 190 Md. 311, 58 A. 2d 643. *Cf. Hammond v. Piper*, 185 Md. 314, 44 A. 2d 756. The grandchildren entitled in remainder were those in being at the testator's death, and the *quantum* of Herbert's interest was fixed at one-quarter of the corpus. We are not concerned with the devolution of the share of John H. Stocksdale upon his death intestate. Even if his mother was excluded as an intermediate heir (which we do not suggest), Herbert's share would not be augmented. As we have indicated, the remainder interest of Herbert was in personalty and not real estate, because of the continuance of the trust and the direction

to sell and divide the proceeds after the termination of the trust as to income. This, however, did not prevent an earlier vesting. *Martin v. Cook*, 129 Md. 195, 98 A. 489.

We think the second decree of the chancellor was also correct. The appellant's claim is not based upon a lien or judgment, but merely upon an agreement to pay certain sums as "permanent alimony," and to pay one-third of the amount distributed to him after settlement of the estate. The appellees contend that such a claim cannot be recognized until reduced to judgment. *Kinsey v. Drury*, 141 Md. 684, 119 A. 646. In any event, we think the claim is barred by the spendthrift trust provisions. *Medwedeff v. Fisher*, 179 Md. 192, 17 A. 141, 138 A. L. R. 1313; *Plitt v. Yakel*, 129 Md. 464, 99 A. 669; *Bauernschmidt v. Bauernschmidt*, 176 Md. 351, 4 A. 2d 712. The appellant is only a contract creditor and has not brought herself within the exception as to alimony laid down in *Safe Deposit & Trust Co. v. Robertson*, 192 Md. 653, 65 A. 2d 292.

The appellees suggest that the costs should be paid by the appellant, or, in the alternative, awarded against the share of Herbert Henry Hitchens. Although the proceeding was initiated by the trustee for a construction of the will, none of the beneficiaries have appealed, and the only questions raised are as to the derivative right of the appellant to a part of Herbert's share. Under the circumstances, we think the point is well taken. In the exercise of our discretion, we shall direct that the costs of this appeal be paid out of that share. Code, Art. 5, § 71.

*Decrees affirmed, costs to be paid out of the fund distributable to Herbert Henry Hitchens.*